UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cr-30039-MGM |
| ) | |
| SUNIL K. AKULA, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER ON THE GOVERNMENT'S MOTION FOR AN
ORDER TO PRODUCE DEFENDANT'S MEDICAL RECORDS
(Dkt. No. 40)

ROBERTSON, U.S.M.J.

I. INTRODUCTION

Defendant Sunil K. Akula is charged by indictment with kidnapping V.K., in violation of 18 U.S.C. § 1201(a)(1), and stalking, in violation of 18 U.S.C. § 2261A(1) (Dkt. No. 4). The government has moved for the court to order Baystate Health to produce the records of Defendant's treatment at Baystate Medical Center in Springfield, Massachusetts on August 6, 2019 (Dkt. No. 40). Defendant has opposed the motion (Dkt. No. 46). After hearing from the parties on March 19, 2020, the government's motion for an order to produce Defendant's medical records is ALLOWED for the reasons that follow.

II. BACKGROUND[1]

Defendant and V.K. were married in March 2017. Since January 2019, V.K. lived in Hampden County, Massachusetts and Defendant lived in Texas.

---

[1] Unless otherwise stated, the background facts are drawn from the government's representation of the evidence that it expects to offer at trial (Dkt. No. 40).

On Tuesday, August 6, 2019, Defendant appeared unannounced at V.K.'s Massachusetts apartment. Defendant yelled at V.K. and argued with her. When V.K. attempted to get away from Defendant by sitting in her car outside the apartment, Defendant followed her outside and struck himself in the head with a brick. V.K. took Defendant to an urgent care clinic for treatment of his head injury. Due to the severity of the injury, Defendant was transported by ambulance from the clinic to Baystate Medical Center in Springfield where he received treatment and was released.

During the evening of August 8, 2019, Defendant yelled at V.K., repeatedly struck her face and arm, twisted her wrist, and told her that he was taking her to Texas. Defendant began dragging V.K. from the bedroom when she refused to go with him. Her resistance was met with a kick to her abdomen and threats against her and her family if she continued to resist. After V.K. got into Defendant's car, Defendant took her cell phone, iPad, work laptop computer, wallet, money, and identification and drove south, away from Massachusetts.

V.K. convinced Defendant to take her to a hospital for treatment of the wrist that he had wrenched. Defendant told the hospital personnel that V.K. had fallen out of bed. When V.K. pleaded with Defendant to let her call her mother, he refused.

V.K. entered Defendant's car after he told her that he would drive her back to Massachusetts and he would return to Texas. While they were driving, Defendant told V.K. he was not taking her home. Instead, they were going to Texas. When V.K. suggested that they go to the police, Defendant struck V.K. in the mouth with his arm and said, "'How dare you speak to me that way?'"

During the trip, Defendant demanded that V.K. call her work supervisor and tell him that she was not returning to her job. He then typed a resignation letter on V.K.'s phone and forced her to e-mail it to her employer. Defendant smashed V.K.'s work laptop computer and left it on the side of the road.

Defendant insisted on listening to V.K.'s phone conversations by speaker phone. Defendant became angry when V.K. told her brother that they were on their way to Texas and would arrive by Sunday night. Defendant told V.K. that, rather than Texas, they were going to a place where no one would find them.

On August 9, 2019, Defendant and V.K. stopped at a hotel in Knoxville, Tennessee. The next morning, Defendant yelled at V.K and struck her in the face and in the arm that he previously had injured. When V.K. cried loudly, Defendant put his hand over her mouth, told her that if she did not stop crying, the police would be called, and turned up the volume on the television to mask her cries.

Defendant then told V.K. that he would allow her to go home and threw down a credit card for her to use to book a flight. When Defendant opened the hotel room door, he was met by law enforcement officers who arrested him for misdemeanor domestic assault. V.K. flew home to Massachusetts.

III. DISCUSSION

The government asks the court to issue an order to Baystate Health to produce Defendant's treatment records from August 6, 2019. Defendant opposes the motion on

the ground that the records lack relevance.[2] Because the records are relevant to proof of the charges against Defendant, the government has the better argument.

The government has sustained its burden of demonstrating that the records are relevant to proof of the crimes of kidnapping and stalking. *See United States v. McCluskey,* Case No. 10-CR-2734 JCH, 2012 WL 13081296, at *2-3 (D.N.M. May 11, 2012) (allowing the government access to defendant's medical treatment records for "self-inflicted cutting wounds" under Fed. R. Crim. P. 17(c) upon the government's showing that the records were "relevant, admissible at the suppression hearing," and limited to one incident). The definition of "relevance" found in Fed. R. Evid. 401 has been applied in the context of federal criminal discovery requests. *See United States v. Pesaturo,* 519 F. Supp. 2d 177, 187 (D. Mass. 2007) (applying Fed. R. Evid. 401 to a discovery request under Fed. R. Crim. P. 16(a)(1)(B)(1)). Under that standard, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Defendant's August 6, 2019 hospital treatment records for the alleged self-inflicted head wound are relevant to the government's proof of the charges against him.

---

[2] Defendant rightly does not contend that the Health Insurance Portability and Accountability Act ("HIPAA") shields the records from disclosure to the United States Attorney pursuant to a court order. "There is no physician-patient privilege under federal common law, and no federal statute creates such a privilege." *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.,* MDL No. 13-2419-FDS, 2013 WL 6058483, at *13 (D. Mass. Nov. 13, 2013)). "HIPAA prohibits the disclosure of individually identifiable health information [without patient authorization], unless one of the statutory exceptions applies, such as disclosure in compliance with a court order." *United States v. Wilson,* Case No. 16-cr-20460, 2020 WL 1429497, at *3 (E.D. Mich. Mar. 24, 2020) (citing 45 C.F.R. § 164.512(e)(1)(i)). The statutory exception for disclosure "to a law enforcement official" for "a law enforcement purpose" in compliance with a court order applies here. *See* 45 C.F.R. § 164.512(f)(1)(ii)(A).

In order to prove Defendant guilty of kidnapping in violation of 18 U.S.C. § 1201(a)(1), the government will be required to prove that he used "some means of force – actual or threatened, physical or mental – in each elemental stage of the crime, so that the victim [was] taken, held and transported against his or her will." *United States v. Macklin,* 671 F.2d 60, 64 (2d Cir. 1982). *See United States v. Chatwin,* 326 U.S. 455, 464 (1946) (it is "the involuntariness of seizure and detention, which is the very essence of the crime of kidnapping."); *United States v. Lowe,* 145 F.3d 45, 52 (1st Cir. 1998) ("For the kidnapping charge, the government needed to show that [defendant] knowingly and willfully seized, abducted, or confined [the victim], transported her in interstate commerce, and held her for 'ransom, reward, or otherwise.'") (quoting 18 U.S.C. § 1201). As to the crime of interstate stalking under 18 U.S.C. § 2261A(1), the government will be required to establish that Defendant "traveled in interstate . . . commerce with the intent to kill, injure, or harass another person and that 'in the course of, or as a result of such travel,' [Defendant] placed his target in reasonable apprehension of harm to herself or a family member." *United States v. Walker,* 665 F.3d 212, 224 (1st Cir. 2011) (quoting 18 U.S.C. § 2261A(1)).

According to V.K., Defendant struck himself in the head with a brick in her presence during an argument on the date he arrived at her apartment in Massachusetts, allegedly with enough force to require treatment at a hospital. As to the kidnapping charge, the treatment records might tend to show that Defendant held V.K. against her will out of fear that Defendant would inflict similar injuries upon her. *See Chatwin,* 325 U.S. at 464; *Macklin,* 671 F.2d at 64. The records might be probative of Defendant's veracity or include information about his actions on August 6, 2019 or the state of his

relationship with V.K. As to the interstate stalking charge, Defendant's medical records of what V.K described as his self-inflicted injury could raise the reasonable inference that he traveled to Massachusetts with the intent to "injure or harass" V.K. and that she reasonably feared for her safety or for that of her family. *See Walker,* 665 F.3d at 224. Whether or not Defendant claimed then, or now claims, that V.K. was the aggressor, the medical records might contain information concerning the cause of his injuries. *See United States v. Wilk,* 572 F.3d 1229, 1236 (11th Cir. 2009) (defendant's medical records were properly admitted at trial to rebut his defense).

In addition, if Defendant's Baystate treatment records corroborate V.K.'s version of events, they are probative of her credibility. *See United States v. Smith*, CASE NO. 18-60039 CR-BLOOM, 2018 WL 9413205, at *1 (S.D. Fla. June 15, 2018) (rap video was admissible to corroborate the robbery victim's testimony); *United States v. Lopez-Ortiz,* 736 F. Supp. 2d 469, 470 (D.P.R. 2010) (finding evidence regarding the credibility of the government's witnesses was relevant and admissible under Fed. R. Evid. 401 and 402); *United States v. Scala,* 432 F. Supp. 2d 395, 401 (S.D.N.Y. 2006) (evidence that was the subject of a rule 17(c) subpoena was relevant because it could corroborate an extortion victim's account). From the government's proffer of its evidence, it appears that there were few, if any, percipient witnesses to the interactions between Defendant and V.K. on August 6 through 10, 2019. Consequently, as Defendant notes, V.K.'s credibility is "central" to the government's case (Dkt. No. 41 at 4). If Defendant's medical records corroborate V.K.'s version of the events of August 6, 2019, the government could use them to attempt to bolster her credibility concerning Defendant's

behavior on that date and concerning Defendant's actions during the trip between Massachusetts and Tennessee.

Defendant also opposes the government's request on the ground that it is seeking his statements that are included in the treatment records. However, in view of the records' relevance, the possible presence of Defendant's statements in the records does not present a basis to preclude their pre-trial production. Whether or not Defendant's statements, if any, that are contained in the treatment records will be admissible at trial presents a separate question to be addressed at a later stage of the litigation. *See United States v. Rodriguez-Berrios,* CR. NO. 04-081 (PG), 2006 WL 8437563, at *3 (D.P.R. Jan. 10, 2006) ("The Federal Rules of Evidence are not rules of discovery."); *see also* Fed. R. Evid. 803(4) (describing the exception to the hearsay rule for statements made for the purpose of medical diagnosis or treatment that describe medical history, past or present symptoms, their inception or cause); Fed. R. Evid. 803(6) (business records exception to the hearsay rule).

IV. CONCLUSION

For the above-stated reasons, the government's motion for an order directing Baystate Health to produce Defendant's medical records for treatment of the injury that he sustained on August 6, 2019 (Dkt. No. 40) is ALLOWED. The parties are to confer about the terms of a protective order, to which Defendant's medical records, when received from Baystate Medical Center, will be subject. By no later than April 24, 2020, the government is directed to submit a proposed order directing Baystate Medical Center to release the records for the court's consideration.

It is so ordered.

Date: April 13, 2020                                    /s/ Katherine A. Robertson
                                                        KATHERINE A. ROBERTSON
                                                        United States Magistrate Judge