UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cr-30039-MGM |
| ) | |
| SUNIL K. AKULA, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF THE COMPLETE DATA EXTRACTION FROM THE PUTATIVE VICTIM'S CELL PHONE
(Dkt. No. 41)

ROBERTSON, U.S.M.J.

I. INTRODUCTION

Defendant Sunil K. Akula is charged by indictment with kidnapping V.K., in violation of 18 U.S.C. § 1201(a)(1), and stalking, in violation of 18 U.S.C. § 2261A(1) (Dkt. No. 4). Defendant has moved to compel the government to produce the complete data extraction from V.K.'s cell phone (Dkt. No. 41). The government has opposed the motion (Dkt. No. 47). After hearing from the parties on March 19, 2020, Defendant's motion to compel is ALLOWED subject to the limitations as further described herein.

II. BACKGROUND[1]

Defendant and V.K. were married in March 2017. According to Defendant, he and V.K. "lived apart intermittently as the two navigated their respective careers in systems engineering and information technology." Defendant contends that "both V.K. and [he] conducted a large portion of their personal, work, and public life via electronic

---

[1] Unless otherwise stated, the background facts are drawn from the government's representation of the evidence that it expects to offer at trial (Dkt. No. 40).

1

devices [up to and through the events alleged in the indictment]. In regard to their personal interactions, the couple maintained the emotional and supportive aspects of their marriage by talking by phone and texting. Both also texted and otherwise communicated with others, including friends and coworkers, through texting and other platforms" (Dkt. No. 41 at 2).

Since January 2019, V.K. lived in Hampden County, Massachusetts and Defendant lived in Texas. On Tuesday, August 6, 2019, Defendant appeared unannounced at V.K.'s Massachusetts apartment. According to the government, Defendant yelled at V.K. during the evening of August 8, 2019, repeatedly struck her face and arm, twisted her wrist, and told her that he was taking her to Texas. When V.K. refused to go, Defendant began dragging her from the bedroom. Her resistance was met with a kick to her abdomen and threats against her and her family if she continued to resist. After V.K. got into Defendant's car, Defendant took her cell phone, iPad, work laptop computer, wallet, money, and identification and drove south, away from Massachusetts. The government alleges that Defendant physically assaulted V.K. while they traveled and prevented her from contacting her family.

On August 9, 2019, Defendant and V.K. stopped at a hotel in Knoxville, Tennessee. The next morning, Defendant allegedly yelled at V.K and struck her in the face and in the arm that he previously had injured. When V.K. cried loudly, Defendant put his hand over her mouth, told her that if she did not stop crying, the police would be called, and turned up the volume on the television to mask her cries.

Defendant then told V.K. that he would allow her to go home and threw down a credit card for her to use to book a flight. When Defendant opened the hotel room door,

2

he was met by law enforcement officers who arrested him for misdemeanor domestic assault. V.K. flew home to Massachusetts.

According to Defendant, V.K. "voluntarily surrendered her . . . Apple iPhone to law enforcement agents" shortly thereafter. The agents used Cellbrite, "one of the leading accepted forensic tools," to extract data from V.K.'s phone. Defendant asserts that the government has not provided all the information produced from the extraction of V.K.'s cell phone, including the metadata (Dkt. No. 41 at 3).[2] Defendant now seeks the information that has not been produced.

III. DISCUSSION

Relying on *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and Fed. R. Crim. P. 16(a)(1)(E) and 16(a)(1)(F), Defendant contends that he is entitled to the extracted cell phone information in order to prepare his defense.

A. Legal Standards

1. *Brady v. Maryland* and *Giglio v. United States*

"In a line of cases beginning with *Brady,* the Supreme Court has made clear that the prosecution in a criminal case has an affirmative duty to disclose information in its possession that is favorable to the defendant and material to the question of guilt or punishment." *United States v. Tsarnaev,* Criminal Action No. 13-10200-GAO, 2013 WL 6196279, at *1 (D. Mass. Nov. 27, 2013) (citing *Kyles v. Whitley,* 514 U.S. 419, 432-33 (1995). *See also United States v. Prochilo,* 629 F.3d 264, 268 (1st Cir. 2011). "Evidence is 'favorable to the accused' if it is either exculpatory or impeaching in nature . . . ." *United States v. Cadden,* Criminal No. 14-10363-RGS, 2015 WL 13683814, at *1 (D.

---

[2] The government has itemized eight categories of extracted information that it has provided to Defendant (Dkt. No. 47 at 2-3).

3

Mass. July 13, 2015), *rec. dec. adopted, in part,* CRIMINAL ACTION NO. 14-10363-RGS, 2015 WL 5737144 (D. Mass. Sept. 30, 2015) (quoting *Prochilo,* 629 F.3d at 628). "Evidence is 'material' for these purposes only if there is a reasonable probability that it could affect the outcome of the trial." *Tsarnaev,* 2013 WL 6196279, at *1 (quoting *United States v. Bagley,* 473 U.S. 667, 682 (1985)). "Defendant's right to the disclosure of favorable evidence, however, does not 'create a broad, constitutionally required right of discovery.'" *United States v. Murray,* Case No. 3:18-cr-30018-MGM, 2019 WL 1993785, at *2 (D. Mass. May 6, 2019) (quoting *Bagley,* 473 U.S. at 675 n.7).

"'The government is primarily responsible for deciding what evidence it must disclose to the defendant under *Brady*' and such decision is generally final unless it is later shown that exculpatory evidence was not disclosed." *Cadden,* 2015 WL 13683814, at *2 (quoting *United States v. Rodriguez-Rivera,* 473 F.3d 21, 25-26 (1st Cir. 2007)). "If a defendant seeks access to specific materials that the government contends are not discoverable under *Brady,* the defendant must make some showing that the material in question could contain favorable, material evidence." *Id.* "That showing cannot be based on speculation." *Id.*

"'*Giglio* material' is related to *Brady* material." *Murray,* 2019 WL 1993785, at *2. "*Giglio* requires the government to disclose evidence affecting the credibility of a witness . . . even if the evidence is not inherently exculpatory." *Id. See Cadden,* 2015 WL 13683814, at *2 ("The government's disclosure obligation extends to evidence used to impeach the credibility of a government's witness.").

      2.      Fed. R. Crim. P. 16(a)(1)(E) and 16(a)(1)(F)

"Federal Rule of Criminal Procedure 16(a) outlines the government's basic disclosure obligations." *Murray,* 2019 WL 1993785, at *2. In pertinent part, Federal Rule of Criminal Procedure 16(a)(1)(E) states:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense; [or]
>
> (ii) the government intends to use the item in its case-in-chief at trial . . . .

Fed. R. Crim. P. 16(a)(1)(E).

Rule 16(a)(1)(F) addresses reports of examinations and tests. The rule states:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if:
>
> (i) the item is within the government' possession, custody, or control;
>
> (ii) the attorney for the government knows – or through due diligence could know – that the item exists; and
>
> (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

Fed. R. Crim. P. 16(a)(1)(F).

"The materiality standard for Rule 16 'essentially tracks the *Brady* materiality rule, though some courts have found that materiality under Rule 16 is broader than under *Brady*.'" *Cadden,* 2015 WL 13683814, at *2 (quoting *United States v. Bulger,* 928 F. Supp. 2d 305, 324 (D. Mass. 2013)). "[O]ther courts have focused on the usefulness of the evidence to defending the case including the potential for uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *Bulger,* 928 F. Supp. 2d at 324 (citations omitted). "Nevertheless, 'the

5

requested information must have more than an abstract relationship to the issue presented; there must be some indication that the requested discovery will have a significant effect on the defense.'" *Cadden,* 2015 WL 13683814, at *2 (quoting *Bulger,* 928 F. Supp. 2d at 324 (citation omitted)).

"The defendant, as the moving party, bears the burden of showing materiality[;]" that is, "'some indication' that pretrial disclosure of the information sought 'would . . . enable[] the defendant significantly to alter the quantum of proof in his favor.'" *United States v. Goris,* 876 F.3d 40, 44-45 (1st Cir. 2017), *cert. denied,* 138 S. Ct. 2011 (2018) (quoting *United States v. Ross,* 511 F.2d 757, 763 (5th Cir. 1975)). "If . . . a defendant's discovery request is grounded in a speculative theory, a district court's decision to deny that request is not an abuse of discretion." *Id.*

> B. Defendant's Request for the Complete Extraction Data from V.K.'s Cell Phone

The necessity of showing that the requested evidence is "material" to the defendant's case is a common denominator between *Brady*, *Giglio*, and Fed. R. Crim. P. 16(a)(1)(E) and 16(a)(1)(F). *See Tsarnaev,* 2013 WL 6196279, at *1; *Cadden,* 2015 WL 13683814, at *2; Fed. R. Crim. P. 16(a)(1)(E)(i); Fed. R. Crim. P. 16(a)(1)(F)(iii). Defendant has sustained his burden of demonstrating the materiality of the contents of the complete data extraction of V.K.'s cell phone.

Defendant is charged with the kidnapping and interstate stalking of V.K. from August 6 to August 10, 2019 (Dkt. No. 4). In order to prove kidnapping, the government is required to show that V.K. was held against her will. *See, e.g., United States v. Chatwin*, 326 U.S. 455, 464 (1946). Similarly, proof of interstate stalking requires a showing that Defendant placed V.K. "in reasonable apprehension of harm to herself or a

family member." *United States v. Walker,* 665 F.3d 212, 224 (1st Cir. 2011). Because it appears that there were few percipient witnesses to the interactions between Defendant and V.K. during the events that form the basis for the criminal charges, the government does not deny that V.K. will be at key witness whose credibility is significant to proving the government's case. In addition, the government does not dispute Defendant's contention that it likely will use the contents of V.K.'s cell phone, including her communications with her work colleagues and others, in its case-in-chief. Although the government represents that it has provided Defendant with a significant amount of data from the cell phone extraction, under the circumstances presented here, he is entitled to have access to the complete contents of V.K.'s cell phone including the metadata, which may disclose attempts to alter or delete data, to determine if it contains additional evidence that will advance his case. *See Goris,* 876 F.3d at 44-45; *Pettiway v. Vose,* 100 F.3d 198, 201 (1st Cir. 1996) (recognizing that the defendant's right to confront and impeach the victim was "central to the defense" in a case involving a "credibility contest" between the victim and the defendant).

The court appreciates the government's concern with the potential precedential impact of permitting access to the entire contents of a witness's cell phone. Indeed, in *Murray*, a drug trafficking case, this court denied the request of the defendant for an order compelling the government to conduct a forensic examination of a cooperating source's personal cellular telephone. *See Murray,* 2019 WL 1993785, at *4. In addition, the court rejected the defendant's request for the issuance of a subpoena under Fed. R. Crim. P. 17(c) ordering the cooperating source to produce his cell phone to the defendant

for the purpose of conducting a forensic examination with the hope of obtaining impeachment material, including metadata. *See id.* at *5-6.

The particulars of this case, however, are distinguishable from those presented in *Murray*, and in *United States v. Lilley,* No. 13-20290-JTF-dkv, 2015 WL 5432005 (W.D. Tenn. July 30, 2015), *rec. dec. adopted,* No. 2:13-cr-20290-JTF, 2015 WL 5432015 (W.D. Tenn. Sept. 15, 2015), upon which the government relies. V.K. is not just a witness. She is, first and foremost, the alleged victim of the crime. The defendant in *Lilley* was charged with offenses related to the sex trafficking of minors and child pornography. *Id.* at *1. The defendant moved to compel the government to produce specific information about ten cellular telephones that the government seized during its investigation, including "the contents of information extracted by the FBI from each phone." *Id.* As to the extracted information, the government disclosed whether the information was material, whether there were any calls to the defendant or to the victims, whether any pictures were seized, whether the material had been provided to the defendant, and whether the information constituted impeachment evidence. *See id.* The court found that the government "has satisfied its discovery obligations regarding the information concerning the cellular phones" and recommended that the motion to compel be denied. *See id.* at *3. In contrast to the instant case, *Lilley* did not involve discovery of the information that was extracted from the *victim's* cell phone.

Defendant has agreed to comply with a "targeted protective order" that will prohibit "re-disclosure of any business-sensitive data that may be included in the extraction" (Dkt. No. 41 at 5). In addition, Defendant has agreed that access to V.K.'s private information including her address, contact information, passwords, and bank

account information will be restricted to Defendant's attorney's eyes only. These are appropriate restrictions and they apply to the court's order.

IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Production of the Complete Data Extraction from the Putative Victim's Cell Phone (Dkt. No. 41) is allowed with the limitations set forth herein. The parties are directed to confer as soon as possible in the circumstances about the terms of a proposed protective order for filing with the court.

It is so ordered.

Date: April 13, 2020 /s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge